UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CASCO MARINA DEVELOPMENT, LLC, <br> t/a JAMES CREEK MARINA <br><br> Plaintiff, <br><br> v. <br><br> M/V FORRESTALL, et. al, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil No. 03-2068 (RCL) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

MEMORANDUM OPINION

Introduction

     This matter comes before the court on cross-motions for summary judgment on the *in rem* claim for the vessel Forrestall and *in personam* claims against James Forrest and Charles Robinson.  Plaintiff Casco Marina Development, LLC ("Casco") filed this suit after the vessel sank in February 2003, through no fault of the plaintiff, and it was forced to salvage the vessel at its own cost.  Plaintiff alleges that when Charles Robinson signed the licence agreement, he was acting as master of the ship, and James Forrest was the owner, thereby making them jointly and severally liable for any delinquent slip fees, damages incurred while salvaging the vessel, interest on fees and damages, as well as contractually agreed upon attorney's fees.  Upon consideration of the defendant's motion and reply, the opposition thereto, as well the relevant law, summary judgment will be granted for defendant Forrest and denied for plaintiff Casco Marina.

Factual Background

This case involves a controversy as to the ownership of the vessel Forrestall, a fifty-seven foot Chris Craft. Plaintiff filed suit to recover delinquent slip fees, as well as costs they incurred when the vessel sank through no fault of the marina. The ultimate issue to be decided is whether defendant Forrest or defendant Robinson was the true owner of the vessel, and therefore liable for all damages and fees. On or about November 1, 2000 Forrest and Robinson entered into a contract for the sale of Forrest's yacht. The agreement stated that before the closing date of May 31, 2001 Robinson would pay a deposit of $10,000, and that closing would be complete when all the necessary documents were received by the buyer and balance of $45,000 was paid to seller. See Def. SJM Ex. G (Yacht Purchase and Sale Agreement) ¶5.

On November 4, 2000, Forrest delivered the vessel to Robinson's agent at Capitol Yacht Club, who subsequently took it to plaintiff's marina. Robinson then entered into a licence agreement with Casco to keep the vessel at the marina. Robinson signed the agreement as the "owner of the vessel", but the contract provided that if more than one person enters into the agreement, they are jointly and severally liable. See Plaintiff Ex. 1 (Licence Agreement). After the vessel was delivered, Robinson began to make the payments, but only paid Forrest $2000. Forrest then wrote to the Coast Guard, advising that title renewal documents for this vessel should be sent to Robinson, but Forrest did not prepare an official bill of sale, nor did he notify the harbor master that he had sold the vessel. Def. Ex. B. Robinson never retitled the vessel in his name, so the last name on the official title was Mr. Forrest's. All documentation including title and insurance had lapsed by 2001. Def. SJM Ex. A (Forrest Affidavit) at 1.

In September 2001 Forrest filed suit in Anne Arundel Circuit Court against Robinson for

monetary damages for breach of contract on the sale of the vessel. Because Robinson neither answered nor appeared in front of the court, a default judgment was entered into the record on the issue of liability for the breach. Robinson did appear in court on the issue of damages, though he presented no evidence, and it was decided that another hearing to decide damages would be unnecessary. The court ordered that Robinson pay the full outstanding portion of the contract which was $43,000. Def. SJM Ex. D (Case C-01-74546 Transcript) at 10.

During this time, the vessel was docked at plaintiff's marina, but Mr. Robinson had paid little or none of the slip fees which were owed to the marina. After unsuccessfully trying to contact Mr. Robinson, plaintiff wrote a letter to Forrest to find out who the title holder was, so they could collect the fees or force the owner to remove the vessel. Mr. Forrest, believing Mr. Robinson to be the owner, did not respond to the letter. Plaintiff MSJ Ex. 2. In February 2002, plaintiff sent another letter to Forrest stating they knew his name was the last one on the title, and that it was trying to get the title to the vessel. Plaintiff MSJ Ex. 3. Again, thinking that Mr. Robinson was truly the owner. Mr. Forrest did not answer the letter. On or about February 3, 2003 the vessel sank in plaintiff's marina, most likely due to not being winterized. Casco wrote Mr. Forrest requiring that he remove the vessel. Mr. Forrest did not respond, but after the marina threatened that if he did not authorize the removal he would be liable for civil and criminal penalties, Mr. Forrest authorized the marina to salvage the vessel, even though he did not believe he actually had the power to do so. Def. SJM Ex. A at 3.

In October 2003, plaintiff filed suit against Forrest and Robinson, but in March 2004, the court entered a default against Robinson. In July, the court further entered a default judgment against Robinson in the amount of $49,910.36 plus prejudgment interest, plus attorney's fees,

3

plus costs, plus post-judgment interest at the legal rate, after which Robinson was terminated from this lawsuit. Forrest then filed a third party claim, and subsequently motions for summary judgment were filed by both remaining parties.

Legal Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To determine which facts are "material," a court must look to the substantive law on which each claim rests. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and consequently affect the outcome of the action. Celotex, 477 U.S. at 322.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. Anderson, 477 U.S. at 255. If summary judgment is denied, there must be evidence on which the jury could reasonably find for the non-moving party. Id. at 252. A nonmoving party, must establish more than a "mere existence of a scintilla of evidence" in support of its position. Id. Furthermore, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment may be granted. Celotex, 477 U.S. at 322.

Analysis

Because the basic facts are undisputed, the sole question fo this court is who is the owner of the vessel, and therefore liable for fees and damages. Defendant Forrest argues that the Court may grant his motion for summary judgment on either the theory that issue of ownership has already been decided, and is therefore barred by the doctrine of issue preclusion, or that if this issue is not barred, the sales contract proves that Robinson is the true owner of the vessel. Plaintiff replies that the issue is not precluded by the prior judgment, and that based on the language of the contract, Forrest is the true owner.

I. Issue Preclusion

Defendant states the issue of ownership of the vessel between Forrest and Robinson was previously litigated and decided in Forrest v. Robinson (A.A. Cir. Ct. C-2001-7-4546) (2002). In this action for breach of contract, Robinson defaulted as to the issue of liability, and as a result a default judgment was entered by the judge. Robinson did appear in front of the court on the issue of damages, and agreed not to go forward with a complete hearing on damages. The court entered a judgment for damages on the unpaid portion of the sales contract between Forrest and Robinson in the amount of $43,000.

Issue preclusion, or collateral estoppel bars the relitigation of specific issues actually litigated in a prior action. United Book Press, Inc. v. Maryland Composition Co., Inc., 786 A.2d 1, 10 (2000). 28 USC § 1738 does not allow federal courts to apply their own rules of issue preclusion in determining the effect of prior state judgments, and requires that a federal court must accept the rules chosen by the State from which the judgment is taken. Kremer v. Chemical

Const. Corp., 456 U.S. 461, 481-82 (1982) (citing McElmoyle v. Cohen, 10 L.Ed. 177 (1839).  In Allen v. McCurry, the Supreme Court that "though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." 449 U.S. 90, 96 (1980).

In this case, the judgment on which defendant relies is from the Maryland court system. In Maryland, to successfully invoke issue preclusion a party must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum." Campbell v. Lake Hallowell Homeowners Ass'n, 852 A.2d 1029, 1037-38 (2004) (internal citations omitted).

Although defendant attempts to invoke the doctrine of collateral estoppel, obviously plaintiff was not a party to the original suit between Forrest and Robinson.  Instead Mr. Forrest should have specifically stated that nonmutual collateral estoppel would bar any litigation as to the ownership of the vessel.  Defensive use of nonmutual collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue previously litigated in an action against a different party.  See Welsh v. Gerber Prods., Inc., 555 A.2d 486, 490 n.6 (1989) (citing United States v. Mendoza, 464 U.S. 154, 159 n. 4, (1984)). We need not determine if collateral estoppel applies because, even assuming the facts in the instant case satisfied its requirements,

default judgments do not have a preclusive effect.

Generally, for collateral estoppel to apply, the issue must have been actually litigated and be essential to the judgment. See generally, Murray Int'l Freight Corp. v. Graham, 555 A.2d 502 (1989); 18 Alan Wright, Arthur Miller, & Edward Cooper, Federal Practice & Procedure § 4422 (2002). Restatement (Second) of Judgments, § 27, states that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or different claim." Restatement (Second) of Judgments, § 27 (1980). Comment (e) states that "[a] judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action." Id. It goes on to state that "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." Id.

In joining many other states, Maryland has recognized the principle in comment (e). See Welsh, 315 Md. at 520-21, 555 A.2d 486 (citing Restatement (Second) of Judgments § 27, and holding that a consent judgment did not have preclusive effect); Porter Hayden Co. v. Bullinger, 713 A.2d 962, 976-77 (1998)(concurring and dissenting) (default judgment had no preclusive effect where issues not actually litigated). When a default judgment is entered where the defendant does not answer or appear to dispute the issue of liability, this fails the "actually litigated" requirement of collateral estoppel. 18A Alan Wright, Arthur Miller, & Edward Cooper, Federal Practice & Procedure § 4442 (2002).

Here, the issue of liability in the breach of contract action was entered as a default judgment against Robinson. Def. SJM Ex. at 3. Although Robinson did appear in court on the

issue of damages, he did not appear as to the issue of liability. When Mr. Robinson did appear, the court made it clear that whether or not Mr. Robinson owes money for the boat was not an issue anymore, and that Robinson could only submit evidence concerning the amount of damages Forrest was entitled to. Def SJM Ex. G at 5-6. The parties do not dispute that a default judgment was entered against Robinson as to the issue of liability. Because the issue of liability, and consequently ownership, was not "actually litigated," it can not be barred by collateral estoppel.

II. Contract Interpretation

     Both parties argue that a "correct" interpretation of the sales contract between Forrest and Robinson, will allow them to defeat the other at summary judgment. Defendant argues that the Court should find that Mr. Robinson, and not Mr. Forrest is the owner of the boat, and therefore liable for any outstanding slip fees, as well as any costs incurred from salvaging the vessel at Casco Marina. This Court must first decide what law will govern the interpretation of the contract of sale between Robinson and Forrest. The interpretation of a maritime contract, where the dispute in not an inherently local one, is controlled by federal law. Norfolk Southern Railway Co. v. Kirby, 125 S. Ct. 385, 392 (2004). Generally, however, the contract for the purchase of a vessel is not a maritime contract, and is therefore governed by the appropriate state law. See Rea v. The Eclipse, 135 US 599, 608 (1890); Flota Maritima Browning de Cuba v. Snobl, 363 F.2d 733, 735 (4th Cir. 1966). In this case, the original contract for sale of the vessel has a choice of law provision which states that the agreement "shall be construed and interpreted in accordance with ...the substantive and procedural law of the State of the Selling Broker's principle office." Def. SMJ Ex. G ¶16. The selling broker is Wagner Stevens Yachts, which holds its principle

office in Annapolis, Maryland. Def. SJM Ex. C ¶2. Because of this contract provision, the Court will interpret the sales contract between Forrest and Robinson according to Maryland law.

The vessel at issue is a "good" under the Maryland UCC because it was movable at the time it was identified when the contract was formed. Maryland Code, Commercial Law § 2-107. Defendant puts forth section 2-401 of the Maryland Commercial Code to prove that he is not the owner of the vessel. This section states as follows:

> (1) Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the title on secured transactions (Title 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.
>
> (2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of security interest by the bill of lading. MD Code Ann., Com. Law §2-401 (2005)

It is not disputed that Forrest and Robinson signed the sales contract, nor is it disputed that Robinson or his agent took delivery of the vessel and subsequently moved it to plaintiff's marina. Once the contract is signed, the Code is clear that, unless the parties explicitly agree otherwise, title passes once physical delivery has occurred.

Although the Code seems clear on this matter, the Court will address plaintiff's arguments that Forrest was really the true owner, and Robinson was merely acting as his agent

when he signed the license agreement to keep the vessel at Casco Marina. Casco argues that the contract provision dealing with the "closing" should be definitive as to when title passes. Paragraph five of the contract provides that the "closing" of the sale shall be deemed completed when "a. All documents necessary to transfer good and absolute title to the yacht have been receive by the Buyer...; and b. The balance of the selling price is paid in certified or collected funds to the seller." Def. SJM Ex. G ¶5. Plaintiff's argument is that final closing never occurred, so the transfer of ownership from Forrest to Robinson never occurred. Neither plaintiff nor defendant defines closing in their brief, nor is the term defined in the contract. Closing is a term of art, and generally is not the same as the transfer of ownership. "At closing" is a term of art which implies that at the time the buyer and seller settle the amounts due and owing between them." Blaine County Title Associates v. One Hundred Bldg. Corp., Inc, 66 P.3d 221, 225 (Idaho 2002). This Court can not infer that this contract provision implied that transfer of ownership would not to occur until closing was completed.

There is also nothing in the contract from which the court can infer that the parties intended for title to pass only when closing was complete. This court can contrast this situation with one in which UCC provisions were overridden by the clear intent of the parties. In Matrix Funding Corp., v. Utah State Tax Comm'n, a sales contract specifically stated that "The parties agree that title to the Equipment shall pass from the Seller [ZCMI] to the Buyer [Matrix] on the Closing Date." 52 P.3d 1282, 1285 (Utah 2002). The Utah UCC, like Maryland's, states that the UCC provisions control unless otherwise explicitly agreed to by the parties. See Utah Code Ann § 70A-1-102(3) (1997); MD Code Ann., Com. Law § 2-401(2) (2005). The court in Matrix held that in a case where the intent is clear, the contract language overrides the UCC provisions. In

this case, there is no explicit language from which the court can infer that the parties intended title to pass only when closing was complete.

Plaintiff further argues that from Forrest's non-compliance with Coast Guard and District of Columbia Municipal procedure, his failure to deny ownership, and his authorization to salvage the boat, the Court can infer that Forrest continued to be the owner of the vessel. Casco states that the proper paperwork was not filed according to Coast Guard procedure, as stated in the CFR. See 46 CFR 67.167 *et seq.* (2004) (Requirement of Exchange of Certificate of Documentation). The CFR provisions which plaintiff points to, do not address transfer of ownership, but only the paperwork the Coast Guard requires for proper registration. These are requirements of new owner and seller once ownership changes hands, it does not deal with actual transfer of ownership. Possession of the paper title or the proper paperwork is not what makes ownership under the UCC. If the seller withholds the title until a later time, the UCC states it can be seen as nothing more than a security interest. MD Code Ann., Com. Law § 2-401 (2005). A security interest is an interest in personal property or fixtures which secures payment or performance of an obligation. MD Code Ann., Com. Law §1-201(27); Tilghman Hardware, Inc. v. Larrimore, 628 A.2d 215, 218-19 (1993) (title reserved for a later transfer created a security interest under the UCC despite absence of language expressly granting a security interest.).

In certain circumstances the national or state provisions may provide that title does not pass until the proper paperwork was filed. In Jerry v. Second Nat. Bank of Saginaw, the Court of Appeals in Michigan held that the UCC provisions must be reconciled with more specific watercraft provisions in the state. In that the Michigan Code stated that "a person acquiring a watercraft...shall not acquire any right, title, claim or interest in or to the watercraft until that

[seller] issued him a certificate of title of the watercraft." Mich. Comp. Laws §281.1204. There, the court held that although the craft was delivered, the title did not pass to the buyer until the paper title was given to the buyer. Jerry v. Second Nat. Bank of Saginaw, 527 N.W. 2d 788, 790 (Mich. Ct. App 1994). Here, neither the CFR nor any Maryland provision states that title will not pass unless and until all the correct paperwork has been filed, so they are not in direct conflict with the Maryland Commercial Code provisions. See 46 CFR 67.167 *et seq.* (2004); MD Code Ann., Nat. Res. §8-715 (2005). Because there is no direct conflict, the Maryland Commercial Code is controlling, and title passes upon delivery. See MD Code Ann., Com. Law. §2-401 (2005).

   Additionally, the Court cannot infer from Mr. Forrest's action that he intended to remain the owner of the vessel. Failure to notify the Harbor Master that he has sold the boat can hardly mean that Forrest believed he was the true owner. Although Mr. Forrest did authorize Casco to salvage the boat, he did not believe he had the authority to do this, and did so only after Casco stated that he, as the last known title holder, would be liable for civil and criminal penalties if he did not comply. Def. SJM Ex. A at 3; Plaintiff Ex. 12. Mr. Forrest did not renew his title after he transferred the boat, nor did he respond when the marina wrote to him that they were trying to get title to the boat, because he did not believe he was authorized to transfer title since he no longer owned it. As further proof that Mr. Forrest did not intend to continue to be the owner, he went to court to get a judgment that would fulfill the outstanding money on the contract on the sale of the vessel. When Mr. Robinson did show up at the trial for breach of contract, he readily admitted that he took delivery of the boat, and that he signed the contract for the specified purchase price. The only issue Mr. Robinson seemed to be concerned with is that the boat was

not in the condition he thought it would be when he purchased it.  Def. SJM Ex. C at 6-8.  Mr. Robinson took delivery of the vessel, and brought it to Casco Marina.  It is also Mr. Robinson who signed the license agreement on the line reading "owner of vessel."  In examining Mr. Forrest's action, in conjunction with the contract and the Maryland Code provisions, it is clear that Mr. Forrest is not the true owner of the vessel, and is not liable to Casco Marina for fees or damages.

Conclusion

For the reasons stated above, defendant Forrest has successfully proven that he is not the true owner of the vessel Forrestall.  Accordingly, summary judgment will be granted for the defendant, and denied for the plaintiff.  Defendant Forrest's cross-claim against Robinson will be dismissed as moot.  A separate Order accompanies this Memorandum Opinion.

Signed by Royce C. Lamberth, United States District Judge, on July 28, 2005.